**GAINES, Appellee, v. WYOMING (Village), Appellant.**
**GAINES, JR., etc., Appellee, v. WYOMING, (Village),**
**Appellant.**

Ohio Appeals, First District, Hamilton County.

Nos. 6602. and 6603. Decided February 4, 1946

Harry H. Baker, Cincinnati and J. G. Williams, Cincinnati, for appellees.

Henry B. Street, Cincinnati, for appellant.

## OPINION

By ROSS, J.

These appeals upon questions of law from the Court of Common Pleas of Hamilton county were heard and considered together.

Service was made on the petitions April 19, 1943.

The first appeal is from a judgment of such court entered upon a verdict in favor of the father of a minor who incurred certain expenses, necessitated in furnishing medical and surgical care and hospitalization to his son, whose leg was amputated as a result of injuries alleged to have been received as a result of a nuisance permitted to exist by the defendant.

The second appeal is from a judgment entered upon a verdict in favor of such minor son, who sued through his next friend, for compensation for such injuries so received.

The issues presented to the jury were made up in each case, through the conflict in allegations of the third amended petitions of the plaintiffs as amended during the trial and the answers of the defendant in each case, as amended during the trial.

The cases were presented to the jury in the same trial. As the issues, except for the allocation of compensation, are identical in each case, the second case will be here considered. Conclusions as to the appeal in the latter case are dispositive of the controversy in the first case as well.

From the third amended petition, as amended at the trial, it appears that the defendant is the Village of Wyoming, a municipal corporation, that it constructed, owned, operated, used, and controlled a "police rifle range" for discharging pistols and rifles at targets, on public grounds belonging to such

village, that the plaintiff, a minor of fifteen years of age, was gathering "scrap rubber" in the vicinity of such range, and one David Bolton "a minor of tender years, standing within said rifle range" had in his possession a 22 caliber rifle, that "suddenly without notice or warning to plaintiff" Bolton discharged such rifle at a target on said range, that defendant was negligent and had created, and was maintaining a nuisance "all by reason of the following, to-wit: said David Bolton had said rifle in his possession for a long time prior thereto and he, and other boys, and police officers of the Village of Wyoming, in accordance with the purpose for which defendant created said range, discharged, and were in the habit of discharging, rifles and pistols at targets on said target range, causing missiles to be projected through the air and the area to be dangerous to life and limb; children, including this plaintiff were in the habit of being, and on said day were, upon and around, and playing near, said range; defendant then, and for a long time prior thereto, knew all of the foregoing, but, notwithstanding the foregoing, defendant permitted, and took no steps and made no effort to prevent, the foregoing actions, nor to abate the aforedescribed nuisance; and as a direct and proximate result of all of which plaintiff was shot in the right thigh and right thumb, and an artery was severed and injured."

The amended petitions contain thereafter allegations of the injuries and financial loss and prayers for compensation.

In the answers, as amended at the trial, of the defendant, it is admitted that defendant is a municipal corporation; that it owned "a part of and used a rifle range for target practice for the police of said village and that such rifle range is located within the corporate limits of said village." Otherwise, such answers constitute general denials of the amended petitions.

From the bill of exceptions, it appears that the Village of Wyoming did construct and maintain a range primarily designed for the use of its police officers, that such range was used by such police force for the purpose of increasing their proficiency in the use of fire arms, which were from time to time discharged at the targets upon such range. The range was located in an area owned by the Village, and used, in various forms, by the public.

It is true that a small V shaped parcel of ground privately owned entered slightly into the line of targets, but such fact is only incidentally involved in the consideration of the issues presented. The range was located directly adjacent to a pub-

lic baseball field, and a space used for picnic's and other recreational purposes. It also was in close proximity to a public dump located on adjacent property owned by the Village. The whole constituted a municipally owned tract, over which the public was permitted to go and which the public was permitted to use with little supervision or control.

In the early part of the year 1942, through cooperation with the Chief of Police of the Village and the principal of the local high school, boys fourteen years of age and older were permitted to use the range and received instructions from Police Officers in the use of firearms while shooting at the targets on such range. There is evidence that the school boys were told not to use the range in the absence of a supervisor or instructor, but there is also evidence that they frequently did so, that Village police and those in authority, representing the Village, saw such frequent use of the range by such boys, saw them discharge firearms thereon at targets, in the absence of supervisors or instructors, that police actually stood on the range watching such unauthorized use and at no time forbade such use. It is perfectly apparent from the evidence that these children were permitted to use the range without any let or hindrance, without any supervision and that the Village, through its police force, had full knowledge that such range was being so used.

The range was constructed along conventional lines. The targets were so constructed as to be lowered and raised by mechanical control at the butts or firing positions. The targets were placed in front of a back stop constructed of earth and timber. The butts or firing positions were located at 25 yards and 75 yards from the targets. There were five firing positions in each row of butts, the positions being approximately two feet apart. Small tables for the convenience of those firing at the targets were placed at the target end of each firing position.

On June 23, 1942, the plaintiff's minor, Gaines, in company with another boy was searching in the city dump in the vicinity of the range for scrap rubber, when his attention was attracted to the discharge of firearms on the Municipal range. The boys went down to the range and found a number of boys and girls on the range. There were four guns being used by the boys and girls, one of them being used by David Bolton. The plaintiff took his position at the fifth butt, a firing position on the 25 yard line of butts, being the 5th butt from the west, resting partly on the small table, his hand on his knees. Bolton was standing at the second butt from

the west on the same line of butts. Gaines was almost directly east of Bolton. The evidence, however, indicates that Bolton was somewhat back of the table in front of the butt and this would place Gaines slightly forward to Bolton's right—there being two butts intervening between them (Butts 3 and 4). This distance is placed at approximately six or eight feet. Just before the arrival of Gaines upon the range, the boys and girls had been shooting at tin cans. There is some evidence that the gun Bolton was using was defective, permitting its unintentional discharge. While Gaines and Bolton were in the respective positions just mentioned—Bolton turned to his right, swinging the gun with his body and just as it pointed at Gaines it was discharged. The bullet passed through Gaines' right thumb and right leg. The injury caused the ultimate amputation of his leg.

As previously indicated, only reference will be made to the action of the minor for compensation, the issues except as noted before being identical.

The action is grounded on "qualified nuisance" involving the issue of negligence connected with the maintenance of the nuisance. The issue is made by the pleadings, and was considered in the general and special charges, and has been presented to this Court as an alternative ground justifying the verdict. It is apparent, however, that the plaintiff sought also to predicate liability during the trial upon the basis of absolute nuisance. Certainly, in his argument and briefs in this Court, he brings this basis of liability before the Court. In any event if the allegations of the pleadings and the evidence, properly admitted, justified recovery upon the existence of either species of nuisance, then the verdict in the plaintiff's favor and the judgment thereon must be sustained, even though a heavier burden was placed upon the plaintiff than was justified by the pleadings, evidence, and the law applicable.

This Court is, therefore, required to examine the pleadings and evidence to discover not only whether the verdict could be sustained by proof of qualified nuisance but whether the existence of an absolute nuisance justified recovery. Of course in each instance the issue of proximate cause exists. Whether a nuisance absolute or qualified existed, such nuisance must have been the proximate cause of the plaintiff's injury in order to sustain recovery.

In **Taylor v City of Cincinnati, 143 Oh St 426,** the Supreme Court has drawn a distinction between absolute and qualified nuisance. The portion of the definition applicable to the facts in this case, germane to the instant question, is that

an "absolute nuisance for which strict liability or liability without fault is imposed by law may be defined as x x x x the unlawfully doing of anything or permitting of anything under ones control or direction to be done which results in injury to another." This definition applies to such nuisances, as it involves private individuals as well as municipal corporations.

As will appear hereafter, there are many considerations affecting municipal corporations which have no application in the case of private persons.

The contention of the plaintiff as far as it concerns this first problem is, that because the Village created, established, and maintained a rifle range, primarily designed for the use of the police force, and permitted its promiscuous use for target practice by children, unattended and without supervision, it created and permitted to exist an absolute nuisance, which was the direct and proximate cause of the plaintiff's injuries.

The basis for such contention is that the Village in so doing violated the provisions of section 12635, General Code, which reads:

"Whoever runs a horse, or shoots or fires a gun or pistol at a target within the limits of a municipal corporation, shall be fined not less than five dollars nor more than fifty dollars."

It is true that in the operation, control, and use of its police force the Village acted in a governmental capacity, City of Wooster v Arbenz, 116 Oh St 281, 284, Aldrich v City of Youngstown, 106 Oh St 342, 344. And it is also true that in the management and control of public grounds, it also acts in a governmental capacity. Taylor v City of Cincinnati, 143 Oh St 426, 447.

Ordinarily, municipalities are not liable in damages for injuries received due to the carrying on of governmental functions. Tolliver v City of Newark, 145 Oh St 517. City of Wooster v Arbenz, 116 Oh St 281, 284.

However, such freedom from liability is dependent upon the lawful exercise of such governmental function, the municipality being amenable to general laws of the State applicable to the particular situation involved. City of Cincinnati v Gamble et al., 138 Oh St 220, 231: State, ex rel. Strain, etc., v Houston, etc., 138 Oh St 203, 210; Schneiderman, etc., v Sesanstein, 121 Oh St 80, 83, 84.

If the Village, therefore, in so creating and maintaining the rifle range violated the general laws of the State, under the provisions of §3714, GC it would be subject to "strict liability" for the proximate results of such violation, the condition so created amounting to an absolute nuisance.

Sec 3714, GC, provides:

"Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation and shall cause them to be kept open, in repair, and free from nuisance."

Whether the Village would have been so liable if the plaintiff had incurred injury when the range was in operation by the police of the Village and during actual target practice by police officers is a question not here presented. Nor is the question here presented as to the liability of the Village if the plaintiff had received his injuries while the police were directly supervising and instructing high school students on the range in the use of firearms which they were discharging at targets.

The range as such, when not in such use, could not be considered to be a violation by the Village of §12635, GC, and did not in such static condition constitute an absolute nuisance, as hereinbefore described.

There is no specific statute forbidding the use of public ground by placing thereon targets, and fixed positions from which objects could be discharged at such targets. No one would assert that such facilities might not be properly used for archery practice even though they might not be of a design and character commonly used. The fact that the Village purposed to use the range for revolver and rifle practice does not cause the range to be solely and completely impressed with any possibly unlawful character.

Nor does the mere fact that it was placed in environment which would bring members of the public using adjacent recreational facilities on or near it justify the conclusion that it was per se either an absolute or qualified nuisance, when it was not being used by the police or by persons directed and supervised by Village authority. That it might be improperly used bears only on the question of negligence, not upon the existence of any species of nuisance. Such failure to foresee injury does not establish nuisance.

But, it is asserted, that by permitting its use by children, the Village permitted such an absolute nuisance to exist. This contention also must fail, for it is stated in the opinion in **Tolliver v City of Newark, 145 Oh St 517, at page 523** of the opinion:

" 'The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of the streets brings into exercise governmental, and not corporate, powers, and the authorities are well agreed that for a failure to exercise legislative, judicial, or executive powers of government, there is no liability.'

"That text is supported by many cited authorities, to a few of which attention will be directed."

If the Village failed to properly enclose the range to exclude the general public, or failed to properly guard the same by police, a situation involving mere neglect, unconnected with an established nuisance, is involved, which neglect, if any is not the subject of any direct and specific prohibition in general law. Such being the case, the element of absolute nuisance involving "strict liability" is excluded from this case by both the facts and law.

The area occupied by the target range was upon public ground of the Village, as that term is used in §3714, GC. **City of Cleveland v Ferrando, etc., 114 Oh St 207.** Streets and public ground are by this section placed in the same category. The duty of the Village as far as nuisance is concerned is the same as to each. **City of Cleveland v Ferrando, 114 Oh St 207, 210.**

In **Tolliver v City of Newark, 145 Oh St 517** it is stated in the fourth paragraph of the syllabus:

"By virtue of the provisions of §3714, GC, the maintenance of municipal streets in a safe condition is made a corporate duty, and for a breach thereof the municipality is liable."

See, also, **City of Cleveland v Ferrando, etc., 114 Oh St 207,** supra. At page 210 of the opinion it is stated:

"Sec. 3714, GC, imposes upon municipalities the duty to keep the public grounds free from nuisance. Municipally

owned and controlled parks, established and maintained for and open to the general public, and to which the general public are invited to come, are, in the fullest sense, public grounds, and come within the provisions of that section of the General Code, and the liability of the municipality for failure to discharge the duty thereby imposed is the same as its liability in that respect with reference to its streets, alleys, and sidewalks."

The application of the principles of liability to the control of such public ground by the Village involves the element of negligence, connected with nuisance.

**Taylor v City of Cincinnati, 143 Oh St 426, supra.**

As stated before, the target range was not in its static condition a nuisance per se. It was not out of repair, contained no pitfalls or traps into which an unsuspecting member of the public using the public ground might fall and be injured.

No unexploded bomb was permitted to exist. The only possible charge is that the Village failed to prevent the unsupervised use of the range by children. What difference is there in such situation from one in which the Village would fail to enforce speed laws within the corporate limits at a school crossing? A child might lose its life by reason of such failure. The authorities noted clearly show that such failure to enforce the law, no matter how reprehensible, would not create liability in the Village. The failure to prevent the discharge of firearms upon the target range was no greater neglect in degree than the failure to prevent such discharge of firearms in any other portion of the Village. If the range in itself constituted no nuisance, then no nuisance existed simply because the Village failed to enforce the provisions of §12635, GC, thereon.

The error in the previous consideration of this case lies in confusing the actual use of the range by the Village police in target practice and the unsupervised use of it by the children.

In the first instance, the Village would be affirmatively engaged in carrying on a proceeding which may or may not be considered violative of the provisions of §12635, GC. In the latter instance, the Village simply failed to enforce the provisions of a general law, which failure differs in no way from any other neglect to enforce laws forbidding the doing of certain acts by private citizens and making the doing of same crimes. In **Western College v City of Cleveland, 12 Oh St 375**, it is stated in the syllabus:

18

"The act to incorporate the city of Cleveland, passed in 1836, provided, among other things, in reference to the city council—'it shall be their duty to regulate the police of the city, preserve the peace, prevent disturbances and disorderly assemblages.' Held, that the duty intended was that properly appertaining to an administrative and legislative body, acting in the government of a city—the making regulations, by-laws and ordinances for the purposes specified, to be enforced by the appointment of officers; and that neither on general principles, nor from the effect of that enactment, is the city of Cleveland responsible for the destruction of property by a riotous assemblage of persons, or for the neglect of the officers in not preserving the peace, and preventing such destruction."

This case is cited with approval in **Aldrich v City of Youngstown, 106 Oh St 342, at page 344.**

Obviously, also if, as is the case here, there was no nuisance, there can be no neglect to remove same or prevent injury therefrom.

It thus appears that this action, as the facts in the evidence are developed, resolves itself into a mere suit to recover damages for injuries received by the plaintiff, as a proximate result of the failure of the Village to enforce a penal statute against persons using the public grounds of the Village—in other words, a simple action of negligence, unconnected with nuisance, and not involving the violation of a special mandate contained in the general law.

There can be no action against the Village based upon mere neglect in connection with the maintenance and control of public ground, unconnected with nuisance, except as is provided in §3714, GC, that neglect so unconnected with nuisance would be limited to a failure to keep such public grounds in repair. No claim is made upon this ground. Mere negligence cannot otherwise itself alone constitute a nuisance. **Taylor v City of Cincinnati, 143 Oh St 426,** supra.

For the reasons given, the judgments of the Court of Common Pleas are reversed, and judgment in each case may be here rendered for the defendant.

HILDEBRANT, P. J., and ROSS, J., concur in syllabus, opinion & judgment.

MATTHEWS, J., concurs in syllabus and judgment.